I understand you're sharing time so please watch the clock and leave when your time is up. I will your honor and the appellants would like collectively to reserve four minutes for rebuttal. All right. Good morning Judge Ikuda and may it please the court. There's a lot going on in the briefing so I want to start by stepping back and level-setting a little bit about what my client does. As it's relevant here, PBMs like Caremark negotiate the net cost of drugs for their health plan clients with manufacturers. Those negotiations determine how much the government ultimately will pay for medicine government employees receive under Federal Employee Health Benefits Plan or FIBA plans. Caremark does not have separate negotiations for FIBA and non FIBA plans. Instead, to maximize its leverage in negotiating with manufacturers, Caremark negotiates the net cost of drugs for multiple plans at the same time. During the relevant period, all insulin rebate negotiations that Caremark conducted for FIBA plans were also for non FIBA plans too. Because California challenges, Caremark's rebate negotiations were at large and because Caremark's FIBA and non FIBA negotiations are plainly connected... Does the government in any way have any involvement in dictating or suggesting how rebate negotiations were to be conducted or is that like a pure business efficiency decision? It's so it is just the way that the actual negotiations are structured is to maximize leverage. The conduct of negotiations is left to the discretion. It makes sense, right? But to what extent is the government involved in that? Well, you could have a federal contract and it lays out specific terms and then in executing that contract you can make lots of business decisions that make sense in the real world, right? That's right, Your Honor, and it's similar actually to Gonsalves where FIBA and this extremely complicated contractual and regulatory regime does give some discretion to the entities that are performing this task for the federal government or federal plans in how best to perform the task. But that doesn't change the fact that the PBMs are performing a key task. The best way to put it might be as a cog in this health care machinery of the government and we're doing something that the government would have to do on its own were Caremark not doing the rebate negotiations for it. Based on the briefing, there's no direct contract between Caremark and the government, isn't that right? That's right, Your Honor. And so your contract is with FIBA and then FIBA is told by the government to include some contract terms in their contract with with Caremark. That's true, Your Honor. We are a subcontractor for FIBA plans. Now the government can audit us directly and those audits do have teeth in that the OIG, O-P-M, will come in and audit and as a result of those audits will essentially tell the FIBA plans they need to direct us to do A, B, or C if we want to keep doing business. It's all part of a of the same complex regulatory regime that in Gonsalves this court found created acting under jurisdiction. And also all of these factual questions do show you that there there are facts around this defense that need to be resolved in the federal court. So the only thing I saw in your briefs that was in the FIBA contract allowed the government to to do the audits, required some transparency, and required some reporting. Is there anything else? Well if you step back Judge Ikuda, there's also the fact of rebates that rebates are contemplated. So rebates are considered a benefit cost within the FIBA ecosystem. Just the fact of negotiating rebates is something that is directly contemplated. And then you're right, there is specific guidance around the audits. There is specific guidance around reporting. But all of that comes in the context of broader standards for PBMs and in the context of broader guidance that PBMs are given in how to discharge this task. Is there a regulation or guidance document you're referencing? I'm sorry, Your Honor? Are you referencing a specific regulation or guidance document? What I'm, no, what I'm referencing is there is the standard FIBA contract and then there are guidance letters which are actually cited in the Hawaii opinion denying the state's motion to remand on materially identical facts. I think the most recent of those was in 2024, February 2024, reiterating the standards that apply to PBMs. It's not like PBMs are like the airwork company in Kalibachi, or I hope I'm pronouncing that right, or the drone maker in Fidelitad, who are, or for that matter the gasoline companies in San Mateo, where a product is made beforehand and the government may buy it or not. PBMs are part of a highly regulated, highly complicated system in which the government is intimately involved from step A to step Z. Can you address the District Court's analysis in rejecting your indivisibility argument? And I'm referring specifically to ER 14 in the District Court's order where it says that Karamark's argument taken to the logical end essentially means, you know, you're nodding, you know the section I'm talking about, that if you take your argument to the logical end and that means any private organizations where the work is performed on behalf of both private entities and the government can take advantage of the federal removal statute. So, and then the District Court goes on to say, yet Karamark has not provided any authority for this proposition, nor has the court found any authority, especially under circumstances similar here, and paraphrasing to shorten it up, where plaintiff has repeatedly demonstrated that it does not seek to sue over any conduct performed on behalf of a federal entity. So how do you respond to that? What's your best argument? So, a few answers, Your Honor. First of all, that understanding of the facts presupposes that the government's view of the facts is correct and that there is some way to pull apart and to sue only on behalf of not, quote, non-FEBA conduct. We disagree with that factual dispute. But that's what the disclaimer is all about, right? They're disclaiming any efforts or attempt to recover based on the FEBA contract. The problem with that, Your Honor, is that to know which claims fall under the disclaimer, you would have to decide if it's possible somehow to pull apart our FEBA and non-FEBA negotiations. That, those negotiations are under defiori at the very least connected and associated with each other. So you actually don't even need to get to the disclaimer. But if you were to get to the disclaimer, the question of whether and how you can pull apart FEBA negotiations is a core factual question. And to illustrate the point, Your Honor, insulin prices, the complaint alleges, stopped going up after 2019. If the government were to give a clean disclaimer that actually said we are not pursuing any claims based on any negotiation involving a FEBA plan, so they really cut it out and there was no, or tried to, I'd still say connected associated with, but set that aside. There's really no FEBA negotiations still in the case. Then all of our negotiations for Caremark PCS, so the negotiations that could be at issue here until 2020, involved both FEBA and non-FEBA plans. So the state's claim would just evaporate. In those circumstances, for the state's disclaimer to mean anything other than the state's claims against my client go away, you need to resolve the factual question of what FEBA, non-FEBA means. Now I see I'm at 12 minutes. I want to be sure I respect my colleague, but I'm happy to answer any further questions on the bottle. May it please the Court. My name is J.R. Scherr. I represent Appellant Express Scripts, Inc., the pharmacy benefit manager engaged by the Department of Defense to administer the prescription drug benefit under the federal TRICARE program. The claims to which we are responding are not about some narrow focused private action within California. The state brings a market-wide challenge on the theory that PBMs, like Express Scripts, are liable for manipulating the list price, something called the WAC, of branded drugs, a price that is set by manufacturers, not by PBMs. Now the state knows that these claims impact federal duties, and so they disclaim in the complaint payments made by the federal but not penalties. And then on removal, the state added or attempted to add an additional waiver, additional disclaimer, that well we're not, we the state, we're not going after any TRICARE conduct. And the problem is that the state's effort to carve out TRICARE claims is inadequate to sever the nexus. Nexus is the key term here, not causal nexus, not causal connection, but the nexus, the connection between the challenge conduct and Express Scripts' delegated federal authority. Because the state's disclaimer does not and cannot foreclose liability for conduct that does and will and will continue to impact, it will have an effect on Express Scripts' performance of its obligations for the Department of Defense. And Express Scripts differs from Caremark in this respect. We, Express Scripts, don't negotiate custom formularies for TRICARE. We did not remove on that basis. The state's disclaimer fails as to Express Scripts not because I thought that they specifically said they're not going after recovery from manufacturers. In, after removal, the state added a, a waiver, purported waiver, that they were not going to go after manufacturers for TRICARE specific claims. But that just begs the question. Because the state insists that it is going after manufacturers for disgorgement, for unjust enrichment, for penalties, for violating what the state says are requirements of the UCL. And the state specifically alleges in paragraph 230 of the complaint that raising the list price and that maintaining a raised list price are violations of the UCL. So, how does one go about allocating? How does one try to figure out what is federal about that and what is private? If a manufacturer, and everybody agrees that the list price is the same for the federal government as well as for private plans. So, Express Scripts has to adjudicate claims for TRICARE using that price. Express Scripts is compensated or at times penalized based on that price. Based on whether Express Scripts negotiates pharmacy discounts that come in under or go above levels set by the federal government in respect to that price. And so, this is part and parcel of what Express Scripts has to do for the federal government. So, when we say, all right, we're going to try to credit the state's disclaimer that you're not really going after TRICARE. What does that mean? Well, how much exactly of the list price that a manufacturer sets is driven by the fact that, say, hypothetically, the relevant market comprises 20% TRICARE beneficiaries? Let's say 20% of the members who purchase this drug are TRICARE beneficiaries. How does that contribute to the price that is set? Well, what if of that 20%, maybe only 10% of the revenue comes from those beneficiaries? Or what if their co-pays, because they're set by the federal government, account for, say, 7.5% of the total co-pay dollars? What is it that you do for the government and for private entities that is, I guess, cannot be disconnected? What is it that Express Scripts does that, like, I understand Caremark's theory that their negotiations on behalf of their clients can't be disaggregated. Does Express Scripts have a similar argument? Well, yes, we do, Your Honor. And what is it that Express Scripts does that can't be for both the federal government and for private entities that can't be disaggregated? Well, Express Scripts has a mandatory obligation to use the price that the state alleges has been artificially inflated, that violates the UCL under the state's theory, to use that price to adjudicate claims under the DOD's healthcare program, under TRICARE. And so, if you credit the state's theory, then every time Express Scripts uses that price, it violates the law. Every time Express Scripts negotiates a discount and has an incentive to get paid by the federal government relative to that price, it violates the law. But the question is, how does one determine it? This is a question of fact. So, if we try to parse it out, if we just take the state's theory as it comes and say, okay, we're going to try to pull out TRICARE claims, well, that doesn't do it because the manufacturer's price is still the same price that applies to everyone. It's not claim-specific. So, this is the same point I was making in response to Judge Wendell's question, that you have to make a judgment call, that the judge, the court, has to evaluate on a case-by-case basis whether the responsibilities that TRICARE has, which is using this mandatory price, using these co-pays, using the government's money to adjudicate government claims on behalf of the government, how much of that is driven by the existence of the TRICARE beneficiaries? But we're in the adjudication of claims and using the government's money. Is the government dictating or directing specifically what the outcome should be? Well, the government, thank you, Judge Betaglia, the government dictates that in advance. The government says in the express group's contract at section G.11.1.4.1 that the price that we use in adjudicating claims has to be a particular price that is set with respect to the manufacturer list price. In section H.1, the compensation that express groups gets or the penalty that express groups incurs is based on using that price in order to adjudicate TRICARE claims. The price set by the manufacturer? The price set by the manufacturers. Now, the state's theory is that the PBMs are responsible for that price in some way, that we have conspired or colluded or somehow contributed to manipulating that price. But that's exactly the problem. Because that's the state's theory, it cannot sever that theory from what we are obligated to do for the federal government. And I see that we've gotten into our reserve time, so I'll reserve further comment for my colleague. Good morning, and may it please the Court. Darcy Tilley on behalf of the Plaintiff Appellee, the people of the State of California. The District Court correctly concluded that the appellant's arguments for removal fail. The central issue in the causal nexus inquiry of the federal officer removal statute is whether a federal officer directed the defendant to take the challenge action. That is unmet here. For my argument, I will start with Caremark, explaining why it cannot meet either the acting under or the causal connection prongs of the causal nexus element. I will then go through the same with Express Scripts, and time permitting, I will discuss the colorable federal defenses. I acknowledge, given the overlap between Express Scripts and Caremark, there will be some discussion of both of their arguments in the Caremark discussion. I'll start with Caremark and the acting under prong. I'm going to start with the Supreme Court's decision in Watson. There, the Supreme Court stated that to meet the acting under prong, a defendant must show federal direction of the acts that are the subject of the plaintiff's complaint. Caremark has not done so here. There is nothing in the FEBA standard contract that Caremark linked in its notice of removal that reflects that the Office of Personnel Management directs or controls Caremark's non-FEBA plan. Can I stop you? Go ahead. Well, I wanted to stop you there because you mentioned the acting under. The focus of the arguments below was very much on the causal nexus. Was the acting under prong, if you will, preserved and argued below? We did argue with respect to acting under below that Caremark and Express Scripts were not acting under federal authority when they were doing their non-federal conduct. I can cite the page number of our brief from the Caremark record. That would be ER 137. We stated, simply put, just because Caremark acts under the direction of OPM for some of its activities, that does not bring all of the company's prior and subsequent actions under the umbrella of federal authority. I also do want to state that we're dealing with federal subject matter jurisdiction, which is never waived. Identify that in the case of Fidelitad versus In Situ, that case made it all the way to summary judgment and then on appeal, the court reversed and sent it back to state court after summary judgment. The issue of federal subject matter jurisdiction can be raised at any time, including by court. I also do want to identify that the issue of Caremark negotiating FIBA and non-FIBA rebates at the same time was not in the notice of removal. That was a fact that came into the record via their opposition to our motion to remand. I'll ask you the same question I ask counselors. To what extent does the federal government have any involvement in or dictate the negotiation of rebates? How does that fit into the whole contracting scheme? The federal government does not dictate how Caremark negotiates rebates. What Caremark identified from the federal contract that it linked in its notice of removal was that it must credit rebates that it obtains to the FIBA plans. If they're for FIBA plans, they must go to the benefit of the FIBA plans. And it must provide information regarding rebates, and it must allow it to be audited regarding the amounts charged for its services. But the provision of information, the auditing relates to financial terms. It is not substantive direction or control regarding how Caremark negotiates rebates. Caremark's attempt to address the fact that it is negotiating rebates at the same time or Caremark's attempt to address the fact that it does not show in the FIBA standard contract that OPM controls its non-FIBA conduct, it discusses the fact that it negotiates both at the same time. That creates an additional problem for Caremark because it shows that for the Office of Personal Management, with respect to FIBA plans, Caremark is providing an off-the-shelf service. And there, that does not meet the acting under prong because there is no federal subjugation direction or control. The word under and acting under needs to have meaning. It's not acting for the federal government, it is acting under the federal government. And in the context of rebate negotiation, the federal government is relying on Caremark and not the other way around. To compare with Goncalves, because it was discussed earlier, Goncalves was challenging a very specific act. It was the filing of a lien on a state court potential judgment. So it was one, it wasn't manufacturing agent orange, which is a complicated thing. It was the filing of a lien. And there was specific federal direction from OPM to FIBA plans saying you must take reasonable steps to subrogate. So the plaintiff was saying, the plaintiff was seeking to expunge the lien, was challenging, saying what the FIBA plan did was illegal and the FIBA plan was required to do that by OPM. That is simply not the case here. There is no direction or control from the federal government to Caremark on how it negotiates FIBA rebates and definitely not with respect to non-FIBA rebates. How does your acting under argument apply to Express Scripts? So with Express Scripts, we're not making an off-the-shelf argument with respect to Express Scripts. But with respect to Express Scripts, our argument is that there is no direction from the Department of Defense regarding how Express Scripts negotiates its non-Tricare rebates. I will point to on the Express Scripts record in its notice of removal, so it's 2ER124-128. Caremark's entire discussion of the acting under prong is discussing the Department of Defense's control over Tricare rebates. It does not discuss non-Tricare conduct. That should be dispositive as to the removal issue as to Express Scripts. Express Scripts has not met Watson, the Supreme Court decision, because Express Scripts has not tied federal direction to the conduct that is at issue in the complaint. There's also Fidelitad, where it is another case that we've cited that references a defendant cannot use federal direction over federal conduct to meet the acting under prong as to non-federal conduct. Can I ask you a question about your choice of language in the disclaimer? Yes. There was a lot of debate and discussions about that. It says the complaint doesn't challenge the creation of custom formularies for federal officer, such as the FEBA or Tricare Governed Health Benefits Plan, and then furthermore, it does not seek to recover monies paid. Is that to be construed as a disclaimer on recovery, as well as, with the first sentence, an affirmative disclaimer of claims? I would direct your honor to the final sentence of the disclaimer, which is the complaint does not seek relief from any PBM defendants that is governed by or available pursuant to any claims involving a federal officer associated with any Federal Employee Health Benefit Act or Tricare Governed Health Plan. So we're disclaiming relief related to FEBA and Tricare Health Plans. We clarified the meaning of this disclaimer through our briefing with the district court, both in our opening brief and our reply and in the oral argument. We are not seeking relief from the PBMs, from the manufacturers related to FEBA plans and Tricare plans. Turning to the causal connection prong, and I'm going to address Caremark's argument that in its briefing, that it can meet the causal connection prong even if the disclaimer is valid. This is incorrect for three reasons. First, the language of the causal connection test that this court uses in Goncalves and in De Fiori, it comes from a long line of Supreme Court precedent starting in 1926 with Maryland v. Soper, and it reflects a situation where the defendant's only connection to the injury was through their federal work. So in the Supreme Court case of Willingham v. Morgan, which is one of Caremark's cases, the defendants worked at a federal prison, the plaintiff was a federal prisoner, and the Supreme Court stated that the reason they could, to remove, all they had to do was, or to meet the causal connection test, all they had to do was show that their only connection with the plaintiff was through their federal duties. In De Fiori, similar situation. Defendant's only connection with the plaintiff, the defendant's only reason for being in Iraq was the federal duties. That's simply not the case here. Caremark cannot say that its only connection to insulin rebates is for FEBA plans. My second reason why Caremark's argument here is incorrect is Caremark cannot say that negotiating FEBA rebates is part of its OPM duties. And third, it's simply acting under prong. This court in San Mateo v. Chevron quoted a House report on the 2011 amendments to FEBA, and the quote is, removal is only allowed when the acts of the federal defendants are essentially ordered or demanded by federal authority, and that is not present here. Caremark's acts in performance of its official duties for OPM are simply not the basis for the people's lawsuit. If Caremark says we only do one negotiation, so let's just simplify the situation. I'm sure it's much more complicated than that. Caremark says we do one negotiation on behalf of all of our clients. And so if you bring, if California brings a claim as to how we negotiate, we do it on behalf of all of our clients, the federal government. So why doesn't that argument work? They say there's no way to disaggregate because we're only doing a single indivisible negotiation. So it doesn't matter how much connection exists if there is no acting under? Well, I'm looking at the causal connection. I'm starting there. If they fail the acting under, it doesn't matter how much connection they meet. But as to that, Caremark doesn't say, and the two prongs are, there is relationship between the two prongs. Caremark doesn't say that OPM orders it to do anything with respect to the non-FEBRA rebates. But that's not the test under the causal connection, right? It's whether the claims of California are related to their relationship to the federal officer. Correct. I'm trying to get there, Your Honor. That is my question. I understand you're acting under argument. Oh, no. It's the wind-up for my argument. So if the argument, if the negotiations are all at once, they're still for non-FEBRA plans, right? The non-FEBRA plans are still getting rebates. The non-FEBRA plans are still subject to... But they're for both. That's their argument. And so the claims and claiming, the specific acts you're doing in your negotiation are unfair competition, or at least in part, due to their negotiations for one class of their clients, the federal government. Because according to Caremark, you can't differentiate it. They act on behalf of all of them. But it doesn't mean that that negotiation only relates to FEBRA. It doesn't have to only relate to FEBRA, right? As long as it relates to FEBRA, that's enough. It has to, the basis of the lawsuit has to, the basis of the lawsuit has to be the conduct for the federal, or due to the federal duty. So there's not a connection between the basis of the lawsuit, which is the people's, or is the non-FEBRA plan conduct, and its federal duties. So there is, it's the basis is still, is limited to the non-federal conduct. Turning to the disclaimer, we recognized in our briefing that this court has not published a decision on a disclaimer in the federal officer removal context. The Third, Fourth, and Fifth Circuit have. We cited those in our brief. Respecting disclaimers is consistent with federal authority that recognizes that a plaintiff does not need to assert all the claims that it might have. Respecting a disclaimer is also consistent with De Fiore, Goncalves, and Fidelitad because when a plaintiff disclaims a defendant's federal conduct and focuses its lawsuit at non-federal conduct, it means the defendant's federal conduct is not the basis of the lawsuit. Turning to Caremark and Express Script's arguments that causation should be decided by a federal court and not a state court, that argument should be rejected because causation is not answering the acting under prong or the causal connection prong. If a defendant could remove only to litigate the issue of causation, which is an element of the plaintiff's affirmative case, it would mean that, again, they're removing without acting under and removing without causal connection. Also, litigating only causation in federal court would not further the purposes of the federal officer removal statute. If the litigation is focused on non-federal conduct, there is no prejudice to a federal program. If the focus of the lawsuit is non-federal conduct, there's not an impeding of federal law enforcement. Again, if it's non-federal conduct that is at issue in the lawsuit, a person who is acting under a federal officer is not being deprived of a federal forum. We couldn't miss the headlines that the FDCE is suing the same defendants or some of them on a similar theory. Is that going to have any effect on the state's lawsuit? Your Honor, I think to respect to my opposing counsel, I don't think we've briefed this issue. I've seen the news reports, but that's all I've seen. I do not believe so. Our litigation will proceed in state court. As I think we've put in our brief, state court-federal court coordination is possible. The manual of complex litigation recognizes that. If there is overlap and discovery, there are ways that state courts and federal courts can go through informal coordination. I don't think our opposing counsel, we've represented to our opposing counsel in the court that we're open to informal coordination with the MDL that is currently proceeding in New Jersey. Turning to express scripts, because the express scripts does not claim that it's duties for the Department of Defense include non-tri-care, it's non-tri-care plan conduct. It cannot meet the causal connection test. Express scripts is not making the same argument as Care Mark. It's not saying that its conduct is indivisible. It's focusing on the price of insulin, claiming that there is only one price. But to remove, again, the defendant has to say that they are acting under federal authority and that there's a causal connection with both of those missing Care Mark or express scripts argument about the price of insulin does not allow it to meet the removal requirement under the causal nexus prong. We haven't talked about how to plead a disclaimer yet. There's over a decade of district court decisions on how to plead a disclaimer. The Fourth Circuit decision, Wood v. Crane, talks about it needs to be fact-based. District court decisions, again, there are aligned with that. Our disclaimer was fact-based and therefore it is, we believe, properly pled. The district court reached the correct decision on that. And Care Mark has not, and express scripts haven't said that they work for a federal authority besides tri-care or the Office of Personal Management. So there's nothing left of their federal conduct outside of our disclaimer. And unless the court has further questions, we respectfully request that the court affirm the district court's order remanding the case to the Los Angeles Superior Court. Thank you. You have a few minutes for rebuttal. Thank you, Your Honor. I'd like to make three quick points and then leave Mr. Scherr a little bit of time. First, going back to Judge Wynn's question, just to give a full answer, this isn't really a case about immunizing all acts by a company. It's really a case about keeping acts that are all part of the same nexus, or to use DeFiori's language, are connected or associated with each other in federal court. And the distinction, I think, is well illustrated by San Mateo or by the climate change cases where a plaintiff says there's fraud, a defendant says, well, we sold gas to the government, and the courts say no. That's not this case. Here we are a key cog in the federal, in FEBA. We negotiate rebates, which, by the way, the state does for itself. The state does too. So rebate negotiation is a fundamental part of providing health insurance. FEBA's entire purpose is to make sure that federal and private plans are on the same footing. For that to happen, it's an essential service for rebates to be negotiated. So this case falls in that line. Second, my friend on the other side argued that we don't act under a federal officer because we are not specifically directed to negotiate rebates in any particular way. First of all, as Your Honor pointed out, the acting under Prong wasn't challenged below. That, candidly, wasn't a surprise given that every court to have considered whether a FEBA plan is, acts under a federal officer, or whether a PBM who subcontracts with a FEBA plan, acts under a federal officer, had held at that point until the decision below that the acting under Prong was met. That includes this court in Gonsalves, the Fifth Circuit in the St. Charles cases, the Eighth Circuit in Jacks, the Eleventh Circuit in the Anesthesiology Associates cases, and, of course, the Fourth Circuit in the County of Arlington case in the specific context of PBMs. All those courts held that FEBA plans act under OPM, as Gonsalves puts it at 1247, based on FEBA as a whole, based on this complex scheme. The courts, including this court in Gonsalves, also have consistently held that the government does not need to direct a specific act. Discretion does not prevent federal officer removal. There has to be some direction to do the thing overall, which there is, in that it is contemplated that rebates will be negotiated. But in terms of directing the actual thing, you must include federal and non-federal conduct. In addition to Gonsalves, which says that's not a requirement, more in the First Circuit. Isaacson in the Second Circuit, motion to appoint counsel in the Third Circuit, Sawyer in the Fourth Circuit, St. Charles in the Fifth Circuit, I can go on. The courts routinely say that is not required. And, of course, Acker in the Supreme Court makes the same point in Justice Ginsburg's response to Justice Scalia's dissent. Finally, as to the FTC action, last thing I would point out, at a bare minimum, obviously there hasn't been briefing on this, but at a bare minimum, the district court credited the state's post-removal disclaimers, which means that it should have conducted a balancing as to whether to keep the case in federal court. It never did that balancing. Under that balancing, things like the FTC action, the existence of an MDL making the same claims on behalf of state attorney generals would be relevant. So for all those reasons, we'd ask that you reverse and remand, or at a minimum, remand for further proceedings with instructions to recall the case from state court. Wow. Well, we'll give you a minute for your rebuttal. Thank you, Your Honor. The district court never considered the existence of a non-causal nexus. It's a standard that she just simply did not address. And likewise, the state in its briefing does not address relating to, as distinct from its assertion, that a because-of standard should apply. But indeed, this court has addressed in an analogous context what it means for one statute or for one topic to relate to another. And in particular, I'll direct the court to the Mateo III or the Sam Mateo v. Chevron case, in which after dispensing in an acting under analysis with the energy company's efforts to remove what the court cases of arm's-length contracts, the court then entertained the energy defendant's alternative removal argument under 28 U.S.C. 1452A. This was an argument that the claims were related to federal bankruptcy cases under Title XI. And the Mateo III court said that in that context, a proceeding is related to a bankruptcy case when, quote, the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. And respectfully, I would submit that a similar concept applies here, that one should look at the test. Is it related or is it not? Is there an impact? Is there an effect on ongoing obligations such as the 15-year term by which Express Scripts has to discharge its obligations for the federal government? You're over time, so please wrap up.  Thank you. The case of California v. Karamark and Eli Lilly and Company is submitted. And for this session, we stand adjourned. All rise. This court, for this session, stands adjourned.
judges: IKUTA, NGUYEN, Battaglia